WILLIAMS, Circuit Judge,
concurring in the judgment:
I agree that “the agreements and contracts USX and Carbon rely upon would not allow reimbursement.” Majority Op. at 1135. Because the agreements and contracts of Carbon and USX do not allow for reimbursement or indemnification, we need not reach in Part II.B. the question of whether the Coal Act precludes the enforcement of such contracts. The majority’s holding on this issue is simply dictum. See Bettius & Sanderson, P.C. v. Nat’l Union Fire Ins. Co., 839 F.2d 1009, 1019 n. 3 (4th Cir.1988) (Murnaghan, J., concurring in part and dissenting in part) (stating that “[t]o reach out and decide what need not be decided is frequently denigrated as dictum.”). Furthermore, I disagree with the majority’s dictum that pre-Act contracts cannot be enforced to indemnify or reimburse a party for its liability under the Act for payments to the Combined Fund. See Majority Op. at 1132-35. Because I believe that the Act does not preclude the enforcement of such contracts, I limit my participation in the majority opinion to concurring in the judgment.
I.
I agree with the majority that the “Coal Act established a new funding method for financing UMWA retirees’ health-care benefits that expressly created new obligations on Carbon and USX ... notwithstanding their prior contracts.” Majority Op. at 1132. Under the Act, Congress provided that all liability for contributions to the Combined Fund shall be determined exclusively under the Act through a statutory assessment imposed on signatory operators by the Commissioner. See id. at 1133. I also agree that Congress intended that these statutory assessments would “reach back” to companies that had left the coal business or bargained out of their prior obligations. See id. at 1133-34 & n. 11.
The express language of the Act states that “[a]ll liability for contributions to the Combined Fund ... shall be determined exclusively under [the Coal Act].” 26 U.S.C.A. § 9708 (West Supp.1996). The majority interprets this provision as abrogating all “pri- or private agreements unless expressly provided for in the Act.” Majority Op. at 1134. However, nothing in the statute warrants this interpretation. Indeed, while I agree that “‘[a]ll liability’ to the Combined Fund [must], be determined by the Coal Act,” id. (emphasis supplied), I cannot find anything in the Act abrogating the liabilities of parties to each other under an agreement for reimbursement, indemnification, or the like, re *1140 gardless of the date of the agreement. Nowhere does the Act preclude the enforcement of pre-Aet contracts. Cf. id. at 1134 (“The Act contains no provisions that expressly provide for the enforcement of pre-Act agreements.”). As a result, while I agree that the Coal Act imposes new duties and liabilities on Carbon and USX, I disagree with the majority's conclusion that the companies’ pre-Act contracts are abrogated by the Act, and cannot be enforced to indemnify or reimburse them for their liability for payments to the Combined Fund. See id. at 1133-35.
The Act specifically states that post-Act, mine operators may reallocate responsibility for assigned retirees’ benefits to the Combined Fund to successor operators by private agreement or contract, provided that the operator transferring the assignment notifies the trustees of the Combined Fund and remains a guarantor of the payments to the Fund. See 26 U.S.C.A. § 9706(b)(2) (West Supp.1996).[1] The majority correctly asserts that § 9706(b)(2) authorizes mine operators to transfer Combined Fund liability to successor operators by contract after the Act’s enactment date, see Majority Op. at 1134-35, but then opines that “[i]f Congress had intended signatory operators to continue to be able to enforce some type of secondary liability under [pre-Aet] private agreements it could have so stated.” Id. at 1135. It is not surprising, however, that a statute enacted in 1992 fails to authorize parties to enter into contracts prior to 1992. As Congress surely realized, mine operators were able to, and did, freely and lawfully reallocate responsibility for retirees’ benefits to successor operators by private agreement or contract prior to 1992. Indeed, it is precisely because operators were able to lawfully bargain out of their prior employee benefit obligations, and because successor operators proceeded to default on the employee benefit obligations they assumed, that Congress enacted the Coal Act. See id. at 1133 (citing legislative history).
In asserting that all pre-Aet contracts are abrogated by the Act, the majority confuses the status of guarantor operators under § 9706(b)(2) with that of operators assigned primary liability to the Combined Fund under § 9706(a) who retain pre-Act contractual rights of indemnification.[2] An operator assigned Coal Act liability by the Commissioner is primarily liable and must pay into the Combined Fund, regardless of the operator’s private, pre-Act contractual rights. I agree that under the Act, the Commissioner’s assignments of liability to the Combined Fund are final. See Majority Op. at 1135. In contrast, an assigned operator who has entered into a post-Act assignment of its primary liability will be liable as a guarantor to the Fund only if the successor operator does not satisfy the obligation. See § 9706(b)(2).
*1141 Additionally, the Act’s express preservation of a broad right of “separate” civil litigation for determining responsibility for assigned premium payments, see 26 U.S.C.A. § 9706(f)(6) (West Supp.1996), undermines the majority’s conclusion that pre-Act contracts are abrogated by the Act. Although pre-Act contracts cannot function to transfer primary liability for employee benefit obligations under the Act, § 9706(f)(6) preserves the right of private civil action for determining responsibility for assigned premiums as between contracting parties.
The majority, in order to explain the very existence of § 9706(f)(6), asserts that in the event of a “problem” with payment by a post-Act successor, § 9706(b)(2) does not provide a resolution. See Majority Op. at 1135. Section 9706(f)(6) exists, the majority claims, for the sole purpose of enabling the transferring operator, pursuant to its post-Act agreement, to seek indemnification (or such other payment allocation provided in the post-Act agreement) from the successor company. See id. at 1135 (“The private action section [§ 9706(f)(6) ] makes clear that the assignor in the post-Act contract may bring a private civil action seeking reimbursement for the premiums it has paid.”).
I agree that § 9706(f)(6) enables operators who have transferred their Combined Fund liability via post-Act contractual agreements to sue for reimbursement or indemnification for the premiums they have paid.' However, I cannot find anything in § 9706(f)(6) that limits that section’s preservation of private civil litigation to post-Act contracts only. The specific application,of the provision to post-Act reimbursement actions says nothing about the provision’s broader implications. In its entirety, § 9706(f)(6) states:
Private actions. — Nothing in this section shall preclude the right of any person to bring a separate civil action against another person for responsibility for assigned premiums, notwithstanding any prior decision by the Commissioner.
In my view, the Act preserves the right of parties to engage in private civil litigation for the purpose of determining responsibility for premium payments, irrespective of whether their agreements were consummated pre-Act or post-Act.[3] This reading of the Act differs from the majority’s only in that it declines to disturb the private contractual rights of parties with regard to matters beyond the concern of the Coal Act.
Thus, an operator who has been assigned primary liability by the Commissioner under the Act for employee benefit premiums to be paid into the Combined Fund may, pursuant to its pre-Act agreement, seek indemnifica *1142 tion (or such other form of reimbursement payment as is provided in the agreement) from the successor company, “notwithstanding any prior decision by the Commissioner.” § 9706(f)(6). In such a case, the Combined Fund is assured of payment regardless of whether the operator bearing primary liability successfully obtains reimbursement from the successor operator because, under the Act, the Commissioner’s assignments of liability to the Fund are final. See Majority Op. at 1135.
II.
Although the Act does not preclude the enforcement of pre-Act contracts, I agree with the majority that “the agreements and contracts USX and Carbon rely upon would not allow reimbursement.” Majority Op. at 1135. As a result, I agree that the agreements and contracts in question do not obligate USX, Arch, Consol, and Old Ben to assume the Combined Fund liability of Carbon and USX. Accordingly, I concur in the judgment of the court.

. I agree with the majority that no pre-Act agreement is protected by this provision, but note that parties contracting prior to 1992 could not have anticipated the Act and thus, absent clairvoyance, would not have contracted in a way that would meet the requirements of § 9706(b)(2).

. The majority confuses the distinction between primary liability to the Combined Fund (created by the Coal Act), and secondary liability among parties (created by private contracts) when it argues that because the Act does not expressly provide an analogue to § 9706(b)(2) for pre-Act contracts, all pre-Act contracts must therefore be abrogated. In making this argument, the majority makes an analytical leap that is unwarranted. The Coal Act does not provide a companion to § 9706(b)(2) for pre-Act contracts because the Act is expressly designed to reinstate the primary liability of the assigned operator, unless and until a post-Act transfer of liability takes place. Obviously, affording a §" 9706(b)(2) transfer right to operators pursuant to their pre-Act contracts would defeat the Act's purpose of assigning primary liability to signatory operators. However, reinstating this primary liability to signatory operators is not inconsistent with allowing such operators private contractual recourse against the parties with whom they have contracted.
The majority asserts that “Congress made no distinction between primary and secondary liability.” Majority Op. at 1135. As evidence of this proposition, the majority chants repeatedly the mantra that “Congress expressly stated that 'All liability’ should be determined as provided for by the Act.” Id. at 1135; see also id. at 1135 ("Congress made clear that the Act would 'expressly' determine all liability.”). Again, the majority looks beyond the mark. Congress did expressly state in the Act that all liability to the Combined Fund is determined by the Act. Congress, however, said nothing to abrogate the right of parties to enforce pre-Act private contracts for indemnification.

. The Conference Report's description of the private action section supports this conclusion:
The section on private actions provides that if parties have commercial contracts related[d] to acquisition or disposition of coal bearing properties or facilities which delineate their respective responsibilities concerning the obligation of retiree health care, the parties may enter into private litigation to enforce such contracts for indemnification or any other form of payment allocation as may be appropriate under their private contract. Otherwise, this language does not create new private rights of action where they would not exist in the absence of this provision.
138 Cong. Rec. S17566-01, S17605-06 (1992).
The majority contends that this section of the legislative history is not persuasive because it is “ambiguous" about whether § 9706(f)(6) relates to pre- or post-Act contracts. See Majority Op. at 1135 n. 15. The majority asserts that
[i]n light of the express language of the Act stating that all contributions shall be determined exclusively under the Act and the legislative history indicating that the Coal Act was intended to correct the problem of operators contracting out of their obligations to the 1950 and 1974 Benefit Plans, we find that the ambiguous ... legislative history is not strong enough to create an enforcement right for pre-Act contracts.
Id. at 1135 n. 15.
In discussing the “express language of the Act,” the majority again confuses the distinction between contributions to the Combined Fund (which are determined exclusively under the Act), and liabilities owed by parties to each other (which may he allocated by contract). Despite the resulting confusion, I agree with the majority that the express language of § 9706(f)(6) (confused or not), coupled with the legislative history (ambiguous or otherwise), does not "create new private rights of action where they would not exist in the absence of” the section. See 138 Cong. Rec. S17566-01, S17605-06 (1992).
However, I find that the right to engage in private civil litigation to enforce a contract existed prior to and independent of the passage of the Act, and that nothing in the Act precludes parties like Carbon and USX from engaging in such private litigation to enforce their pre-Act contracts.